UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case Number 17-20178
        Honorable David M. Lawson

JOHNNIE EWINGS,

        Defendant.

_____/

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Johnnie Ewings has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Because he has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion will be denied.

I.

Ewings pleaded guilty to three counts of possessing heroin, cocaine, and crack with intent to distribute it. On June 12, 2018, he was sentenced to concurrent terms of 60 months in prison. He has served approximately 26 months, and he presently is confined by the Bureau of Prisons at Morgantown FCI, a minimum security facility that houses more than 480 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on October 19, 2022. Ewings is 44 years old.

On July 15, 2020, Ewings filed a *pro se* motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. In his motion, Ewings argues that he is qualified for release based on his medical conditions which include hypertension and

prediabetes. The Court appointed counsel and set deadlines for briefing on the motion. The government filed a response in opposition, and the defendant has filed a reply.

The government concedes that the request for release has been administratively exhausted. However, it argues that release is not favored because Ewings has failed to show that he suffers from any health condition that comprises a significant risk factor for exposure to the coronavirus disease. The government contends that "prediabetes" is not a recognized risk factor, and hypertension is only a factor that, according to the latest CDC guidance, "might" put persons at increased risk. The government also argues that the defendant's risk of infection is minimal or none because there are no active cases at his facility, and no inmates have been infected.

The most recent data disclosed by the BOP indicates that there is one active coronavirus case among the staff at Morgantown, and one staff member who previously was diagnosed and now has recovered from the disease. Reports indicate that no inmates have been infected. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)). Upon a proper motion via either avenue, the Court may, "[a]fter

'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). "Even though [the] exhaustion requirement does not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison." *Id.* at 833-34 (quotations omitted).

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied. However, the defendant has not advanced sufficiently compelling circumstances to warrant a sentence reduction based on his diagnosed medical conditions, even though one of them (hypertension) does comprise a recognized serious risk factor for coronavirus infection.

That is not to minimize the severity of the present crisis, which is striking and unprecedented. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It

presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020). "[T]he crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  Among those recognized risk factors are hypertension and Type 1 and Type 2 diabetes.  *See* CDC, Risk Factors: Certain Medical Conditions,    https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  However, "prediabetes" does not denote a diagnosed diabetic condition, but instead indicates merely the presence of higher than normal blood sugar which may make it more likely that a person will develop Type 2 diabetes.  *See* WebMD: Types of Diabetes, https://www.webmd.com/diabetes/guide/types-of-diabetes-mellitus ("Prediabetes is when your blood sugar is higher than it should be but not high enough for your doctor to diagnose diabetes. . . . Prediabetes can make you more likely to get type 2 diabetes and heart disease."). The defendant's

medical records indicate that he has been prescribed medication for his hypertension, and that at last report it was "fairly controlled." *See* Medical Report dated June 24, 2019, ECF No. 37-1, PageID.140.

Published reports suggest that officials at FCI Morgantown have had unusual success in mitigating the dangers of the pandemic, since there have been no documented cases of infection among the relatively small prisoner population, although two staff have fallen ill. To be sure, the government's position that the defendant is at low or no risk is somewhat less reassuring considering the BOP's admitted failure to implement any comprehensive prophylactic testing program, which calls into doubt the figures that it has reported. *Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) ("As of June 23, 2020, no cases of COVID-19 at Yankton FPC had been reported. However, without knowing whether the BOP is actively testing inmates and staff members for COVID-19 at Yankton FPC, the lack of active confirmed cases does not mean COVID-19 is not present at the facility. Nor does it mean there will not be a future outbreak at the facility. As the Government acknowledges, despite extensive measures to prevent transmission, more federal inmates will inevitably contract COVID-19 going forward."). Nevertheless, the available information indicates that the defendant's risk of infection is as low as it would be at home, and perhaps lower in light of the measures taken by BOP that appear to have minimized the spread at Morgantown despite

the recent alarming acceleration of the pandemic among the public at large, particularly in West Virginia, where recent daily case counts are trending higher now than ever before. *See* Coronavirus Statistics: West Virginia, https://www.worldometers.info/coronavirus/usa/west-virginia/.

On similar and even more compelling facts, the Court denied a motion for compassionate release presented by a defendant who had been diagnosed with Type 2 diabetes and hypertension, where both conditions were "well controlled" by medication, and the facility where the defendant was confined had no active cases of coronavirus. *United States v. Lucas*, No. 17-20627, 2020 WL 4437565, at *5 (E.D. Mich. July 31, 2020). The same holds true here. The defendant has not established that his ongoing confinement poses a sufficiently serious danger to his health to warrant immediate release.

### III.

Ewings has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 30) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   August 17, 2020